UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MAUREEN SULLIVAN-STEMBERG,         )
                                   )
        Plaintiff,                 )   Civil Action No.:
v.                                 )   04 10298 WGY
                                   )
TURNER CONSTRUCTION COMPANY and    )
NISHIMATSU CONSTRUCTION CO., LTD.  )
                                   )
                                   )
        Defendants.                )


**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER OPPOSITION TO DEFENDANT TURNER CONSTRUCTION COMPANY'S MOTION TO DISMISS**


Now comes the Plaintiff in the above-captioned civil action and hereby files her Opposition to Defendant, Turner Construction Company's ("Turner") Motion to Dismiss pursuant to Fed.R.Civ.P. Rule 12(b)(6, and shows the Court as follows:


**I. FACTUAL BACKGROUND**


Plaintiff, Maureen Sullivan-Stemberg ("Stemberg"), is an individual currently residing in Boston, Massachusetts. In or about March, 1998, she became a resident of The Flagship Wharf Condominiums located at 197 Eighth Street in Charlestown, Massachusetts. Specifically, Plaintiff moved into Penthouse No. 222 of the Condominium complex. Thereafter, in late 1998/ early 1999, plaintiff began to develop unknown and chronic respiratory and pulmonary illnesses, seeking medical treatment at the Brigham & Women's Hospital among other medical providers. Over the next

several years, plaintiff's condition deteriorated and unfortunately her treating physicians were baffled, unable to clearly diagnose the conditions from which she suffered. Over the period of time from early 1999 until the summer of 2002, plaintiff's health continued to suffer and she incurred substantial medical bills in excess of $100,000.00. Concurrently, between 1999 and 2002, while living in her Penthouse No. 222, plaintiff began to notice increasing amounts of water damage throughout the apartment, including in the walls, under the floor boards, ceiling and other areas. The water damage was reported to the Condominium Association, but no measures were taken to correct the problem.

Finally, in or about late February, 2002, for the first time, plaintiff began to suspect that her respiratory and pulmonary conditions, among others, may have been related to the standing water existing in plaintiff's unit. She contacted a local environmental company to perform air quality measurements in her unit, which were conducted March 1, 2002. The processing of the testing was completed on or about March 7, 2002. Characterizations of the samples were not completed until March 12, 2002. The testing revealed the presence of various molds and fungi within plaintiff's unit. Plaintiff collectively attaches and incorporates by reference as Exhibit A, the Air Quality Measurements Report prepared by Envirotest Laboratory with regard to the inspection of plaintiff's unit.

Consequently, the first time plaintiff could have reasonably been aware that any nexus may have existed between her serious

medical conditions and the presence of fungi and/or mold was after March 12, 2002. To that point the presence of offending mold and/or fungi was inherently unknowable to plaintiff. The Complaint against defendant Turner was filed February 12, 2004, or less than two years after the discovery of the presence of mold and/or fungi in plaintiff's unit.

## II. Argument

Plaintiff does not dispute the authenticity of Defendant's Certificate of Use and Occupancy dated August 7, 1990. Furthermore, plaintiff is aware of the provisions contained within M.G.L. c. 260 §2B and concedes that despite the fact that the discovery of the defect allegedly existing in her previous premises was not until March, 2002, her negligence claim against this defendant is probably time-barred by the statute of repose. Hence, plaintiff acknowledges that Count I of the Complaint may be properly decided via defendant Turner's Motion to Dismiss.

With regard to Defendant's Motion to Dismiss Count II, which contains the implied and express warranty claims, along with Count III, which contains the M.G.L. c. 93A claim, it should be denied for two reasons. First, an implied warranty claim, is a contract action, and M.G.L. c. 260 §2B has been held not to apply contract actions. *See* Klein v. Catalano, 386 Mass. 701 (1982). Second, as plaintiff stated in the factual portion of plaintiff's memorandum, this particular claim falls squarely within the confines of Massachusetts' "discovery rule" and as such the statute of

3

limitations on the implied and express warranties claims would not expire until March 12, 2005.

### A. Plaintiff's Implied Warranty Claim Does Not Contain the Same Elements as Her Negligence Claim and Is Not Barred by M.G.L. c. 260 §2B

The fist issue which must be addressed is whether plaintiff's implied warranty claim is truly a contract action and not simply a tort claim, utilizing implied warranty language. In determining whether a plaintiff may escape the consequences of the statute of repose or the statute of limitations on tort actions pursuant to M.G.L. c. 260 §2B, the court must look to the "gist of the action". Hendrickson v. Sears, 365 Mass. 83, 85 (1974). The seminal case concerning implied warranties is Klein v. Catalano, 386 Mass. 701 (1982). In Klein, plaintiff brought a claim against an architectural company for injuries sustained from a plate glass door occurring fourteen years after the design of the door. The Supreme Judicial Court held that "[a]n architect's efficiency in preparing plans and specifications is tested by the rule of ordinary and reasonable skill usually exercised by one of that profession…. [I]n the absence of a special agreement he does not imply or guarantee a perfect plan or satisfactory result." (Quoting Mississippi Meadows, Inc. v. Hodson, 13 Ill.App.3d 24, 26, 299 N.E.2d 359 (1973). Hence, the Supreme Judicial Court distinguished professions like architects, doctors, engineers, attorneys and others from manufacturers because those professions deal in somewhat exact sciences and are continually called upon to

4

exercise their skill and judgment in order to anticipate and provide for random factors which are incapable of precise measurement. Klein at 721. Moreover, unlike a mass producer of consumer goods, "an architect has but a single chance to create a design for a client which will produce a defect-free structure…" Id. at 721. In the case at bar, Turner is a general contractor and impliedly warranted that the method, manner and materials used in building the condominium complex, including plaintiff's unit, would make it fit for its intended purpose, i.e., be habitable. Since the present action was only filed a few months ago, and plaintiff has not been given the opportunity to conduct the necessary discovery of this defendant nor of the co-defendant, she cannot determine whether the manner of construction and materials used created a residence fit for habitation. In fact, based upon information and belief, plaintiff's claim of breach of an implied warranty is based, in part, upon information that her unit, as well as others within the complex, were missing certain construction materials which could have drastically reduced or even eliminated the existence of the standing water. But for the presence of substantial standing water, the development of the mold/fungi would not have occurred. Plaintiff collectively attaches and incorporates by reference as Exhibit B, copies of photographs depicting the substantial water damage within plaintiff's unit.

Consequently, even on the face of the complaint, plaintiff contends that her claim of a breach of implied warranty does not contain the same elements as her negligence claim, bringing it

5

within the auspices of M.G.L. c. 260 §2B. If plaintiff's claim for a breach of implied warranty is not governed by M.G.L. c. 260 §2B, then it falls within the "discovery rule" as set forth below concerning plaintiff's express warranty claim. As such, defendant's Motion to Dismiss Count II of plaintiff's complaint concerning her implied warranty claim should be denied.

### B. Plaintiff's Express Warranty Claim is Not Time Barred Due to the Massachusetts Discovery Rule

Even if the Court is persuaded that plaintiff's claim for a breach of implied warranty contains the same elements as her negligence claim, and plaintiff vehemently disputes that it does, plaintiff's express warranty claim still survives Defendant's Motion to Dismiss since it falls within the Massachusetts "discovery rule".

The purpose of the "discovery rule" is to assure that " 'a plaintiff [] be put on notice before his claim is barred,'" Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc. 396 Mass. 824 (1986), *quoting* Franklin v. Albert, 381 Mass. 611, 617 (1980). The "discovery rule" applies to those defects, which are inherently unknowable to the plaintiff, focusing on whether reasonable diligence could have led to discovery of the defects. In the case at bar there is little doubt that plaintiff could not have identified the cause of her illness prior to the completion of the air quality measurements in March, 2002. Coupled with the fact that plaintiff's treating physicians were so baffled by her presenting symptoms that their diagnoses ranged from Lupus to

6

Sjogren's Syndrome to thyroid cancer. It was not until late February, 2002 that plaintiff first suspected that there could be a link between her illness and the increasing water damage problem within her unit. As stated in Franklin, supra, fairness dictates that the discovery rule not be deemed inapplicable simply because reasonable actions other than those taken by the plaintiff *could* have uncovered the injury or cause of harm. Franklin, 381 Mass. at 618. In the present case, within a week plaintiff first suspected there may have been link between her illness and the standing water existing within her condominium unit, she hired a environmental company to conduct air quality measurements to determine whether there were, in fact, water-born bacteria, mold and/or fungus present. As articulated by the Supreme Judicial Court in Bowen v. Eli Lilly & Co., 408 Mass. 204 (1990): "the decision whether any [injury] should reasonably uncovered ha[s] to be made in light of what reasonable inquiry would have disclosed." Id. at 206.

It seems relatively clear that if plaintiff's own treating physicians could not identify what her illness was for several years, then the etiology of her illness would be virtually impossible to discover. Such a fact is particularly cogent in light of the fact that only recently has toxic mold exposure been linked to significant health problems in the general population. Plaintiff anticipates that this link could, in fact, be challenged at a later date.

With regard to Turner's argument that it did not make an express warranty to plaintiff, such an argument is meritless as

7

the express promise would have been made to Flagship Wharf Condominium Association. Considering Turner was aware that after its construction of the complex, individuals would be residing within the units, any breach of express warranty would inure to those residents. Privity to the contract is not a necessary element for a breach of an express warranty claim involving a consumer or a non-commercial plaintiff. *See e.g.* Jacobs v. Yamaha Motor Corp., 420 Mass. 323 (1995). If plaintiff's warranty claims survive defendant's Motion, then Count III of plaintiff's complaint, which alleges 93A violations for those breaches of warranty, must remain as well.

### III. Conclusion

Based upon the foregoing, Plaintiff respectfully requests that Defendant, Turner's Motion to Dismiss Counts II and III be denied. The implied warranty claim does not contain the same elements as her negligence claim and is not controlled by the statute of repose, but rather the "discovery rule". Further, plaintiff could not have discovered the defect as it was inherently unknowable until March, 2002. Finally, plaintiff's express warranty claim does not require privity. Consequently, Counts II and III of plaintiff's Complaint should remain.

                                                Respectfully submitted,
                                                By plaintiff's attorney
                                                LAW OFFICES OF JEFFREY S. GLASSMAN, LLP

Dated: 7/14/04

                                                _____
                                                Neil S. Cohen, Esquire
                                                BBO # 561173
                                                One Beacon Street, Suite 3333
                                                Boston, MA 02108
                                                (617) 367-2900